Brenda Joyce **CARRELL**, et al, Plaintiffs,

v.

**CITY OF PORTAGE, INDIANA**, et al, Defendants.

**Civ. No. H84-74.**

United States District Court, N.D. Indiana. Hammond Division.

May 29, 1985.

James J. Nagy, Munster, Ind., for plaintiffs.

Kenneth Nowak, Merrillville, Ind., for City of Portage, Pat Witka and Marvin Owens.

Harry J. Jennings, Merrillville, Ind., for Maureen Nulf.

## ORDER

MOODY, District Judge.

This matter is before the Court on a Motion for Summary Judgment filed by defendants City of Portage, Pat Witka, and Marvin Owens on December 7, 1984. Plaintiff Brenda Joyce Carrell, acting as Administrator of the Estate of Charlie Carrell, Jr., deceased, filed a Response to Defendants' Motion for Summary Judgment on January 8, 1985. Defendant City of Portage filed a Reply on January 14, 1985. The Defendants' Motion for Summary Judgment is DENIED.

### BACKGROUND

This Court exercises diversity jurisdiction over the instant case under 28 U.S.C. § 1332. The plaintiff alleges an action for wrongful death arising out of a vehicle-pedestrian accident.

At approximately 1:00 a.m. on the morning of May 28, 1982, City of Portage firemen Pat Witka and Marvin Owens were returning from a fire in a firetruck when they observed Charlie Carrell stumbling in a drunken state on the side of U.S. Highway 20. The firemen parked their truck a short distance from Mr. Carrell and radioed the police for assistance. Before the police arrived, the firemen watched Mr. Carrell walk onto the highway in front of an oncoming automobile driven by Maureen Nulf. The firemen flashed a spotlight in the direction of the oncoming automobile and Mr. Carrell as a warning to the driver to avoid the pedestrian. Nulf's automobile struck Mr. Carrell and he later died. Brenda Joyce Carrell, as Administrator of Charlie Carrell's estate, now brings suit against Maureen Nulf, the two firemen, and the

City of Portage, claiming that the negligent actions of all the defendants caused the wrongful death of Charlie Carrell.

*Summary Judgment*

Defendants City of Portage, Pat Witka, and Marvin Owens present two arguments for summary judgment under Rule 56, Fed. R.Civ.P. First, defendants argue that they are immune from liability under the Indiana Tort Claims Act, I.C. § 34–4–16.5–3(6) (1983), as the firemen acted within their discretionary function. Second, the defendants assert that they owed no duty to Charlie Carrell because no special relationship existed between them and no rescue was undertaken.

1. *Standard*

In reviewing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, this court must judge whether the defendants present a claim involving no genuine issues of fact which entitles them to dismissal as a matter of law. Fed.R.Civ.P. 56. In this inquiry, the court draws all inferences of fact against the moving party and in favor of the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

2. *Immunity—Scope of Employment*

■ With this standard of review in mind, I address the question of immunity under the Indiana Tort Claims Act (ITCA). The Act provides in pertinent part that:

A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:

.    .    .    .    .

(6) the performance of a discretionary function.

I.C. 34–4–16.5–3 (1983).

This statute codifies two requirements traditionally recognized as necessary in order for governmental immunity to apply to an individual actor: (1) the agent's action must have been within the scope of the agent's employment; and (2) the action must have been taken in the performance of a discretionary function. *Board of Commissioners v. Briggs*, 167 Ind.App. 96, 337 N.E.2d

852, 861 (1975). *See* Note, "Sovereign Immunity in Indiana—Requiem?", 6 *Ind.L. Rev.* 92, 104 (1972). Since the actions taken by firemen Owens and Witka were outside the scope of their employment, they cannot claim immunity from suit under the ITCA.

The duties of the state fire marshal are set out at I.C. § 22–11–5–6. At the time this cause arose in 1982, the duties included enforcement of

all laws of the state and ordinances of the several cities and towns in Indiana, providing for any of the following:

(1) The prevention of fires;

(2) The storage, sale and use of combustibles and explosives;

(3) The installation and maintenance of automatic or other fire alarm systems and fire extinguishing equipment;

(4) The investigation, prosecution and suppression of the crime of arson and other crimes connected with the destruction or attempted destruction of property by fire or explosion, and the crime of swindling or defrauding an underwriter or attempting to do so; and for the investigation of the cause, origin and circumstances of fires. It shall further be the duty of the state fire prevention commission to make, establish, and promulgate rules and regulations not inconsistent with any existing law or laws in the state of Indiana for the prevention of fires and fire losses.

I.C. § 22–11–5–6.

Under the 1982 version of I.C. § 22–11–5–8, all municipal fire marshals and chiefs of fire departments were made assistants to the state fire marshal for execution of these definitive provisions.

■ The attempted rescue of Charlie Carrell was clearly outside the firemen's statutory duties, which are exclusively fire-related. The statute does not mention any general duty to maintain public safety; firemen have no responsibility under Indiana law to police highways or rescue individuals from apparent harm. In addition,

defendants Owens and Witka acknowledge that their individual contracts with the City of Portage do not contemplate a general safety duty. Each defendant has filed an affidavit with the Court stating

> That I, as a fireman, had no statutory duties, or duties prescribed by any departmental rule or regulation concerning the enforcement of laws or control of vehicle or pedestrian traffic along public highways.

Affidavits of Owens and Witka, filed December 7, 1984.

The words of the Indiana Code and the substance of these affidavits are fatal to the defendants' motion, since "scope of employment" under the ITCA has been construed to reflect the statutory or contractual duties of public employees. For example, in *Foster v. Pearcy*, 270 Ind. 533, 387 N.E.2d 446 (1979), the Indiana Supreme Court examined the scope of employment of a county prosecuting attorney. Finding that the attorney was immune from liability for public statements regarding pending cases, the court wrote that

> While we base our decision primarily on the common law immunity traditionally accorded to prosecuting attorneys, we also note that the duty to inform the public can be characterized as a discretionary function and thus would fall within the absolute immunity granted under the Indiana Tort Claims Act. I.C. § 34–4–16.5–3(6) [Burns Supp.1978]. This decision will insure that the prosecutor will be able to exercise the independent judgment necessary to effectuate his duties to investigate and prosecute criminals and to apprise the public of his activities. It will also allay the apprehensions about harassment of prosecuting attorneys from unfounded litigation which deters public officials from their public duties.

*Id.* at 449.

The decision includes a caveat: "We express no opinion as to the liability of prosecuting attorneys or their deputies for acts outside the scope of their authority. We hold only that where, as here, the acts are reasonably within the general scope of authority granted to prosecuting attorneys, no liability will attach." *Id.*

The Indiana Supreme Court colored a part of this gray area in *Seymour National Bank v. Indiana*, 428 N.E.2d 203 (1981). *See generally* Mead, "Torts, Survey of Recent Developments in Indiana Law." 16 *Ind.L.Rev.* 1, 411–14 (1983). There, the Indiana Supreme Court found that a high speed chase was within a state trooper's scope of employment, while noting that

> an employee's acts, although committed while engaged in the performance of his duty, might be so outrageous as to be incompatible with the performance of the duty undertaken. In such a case, it cannot be said that an injury resulting therefrom resulted from the performance of the duty. Such acts, whether intentional or willful and wanton, are simply beyond the scope of employment.

*Id.* at 204.

The trooper was immune because the chase was within his sphere of duty and did not go beyond zealous execution of that duty. *See also Jacobs v. City of Columbus*, 454 N.E.2d 1253 (Ind.App.1983); *Indiana State Police v. May*, 469 N.E.2d 1183, 1184 (Ind. App.1984).

■ After *Seymour*, it appears that ITCA immunity requires as a minimum that the agent act within the general scope of his or her statutory duty. Even within the sphere of that duty, the *Seymour* Court noted, an agent may surpass the bounds of immunity. And so it is here. Owens and Witka had no duty as firemen to police the highways and effect rescues of pedestrians. Even if their close association with law enforcement officers gave rise to a putative duty to radio for help, it does not extend so far as to shield them from liability for an affirmative act, i.e. shining the spotlight, which was wholly unrelated to any fire, arson, or fire safety regulation.

■ Good faith, responsible rescue attempts are to be encouraged, and the law will hold a private individual responsible

for negligent affirmative acts only if a duty to rescue is established. Police may be immune from liability for acts similar to those at bar, in part, to encourage vigorous performance of their statutory safety duties. Firemen have a comparable immunity when they fight fires. *See City of Hammond v. Cataldi,* 449 N.E.2d 1184 (1983). However, firemen do not have particular expertise in safety matters unrelated to fires.[1] That is not their job. They are trained differently than policemen. And when firemen act outside the scope of their expertise and authority, as Owens and Witka did when they attempted to rescue Charlie Carrell, they stand on the same footing before the law as other good faith rescuers.[2]

### 3. Duty

As an alternative, defendants City of Portage, Owens and Witka argue that they had no duty of care with respect to Charlie Carrell. This argument fails.

While it is true that no obligation to come to the aid of another who is in peril exists under Indiana law, a duty to act with reasonable care may arise when affirmative conduct is undertaken to rescue. *Perry v. NIPSCO,* 433 N.E.2d 44, 50 (1982). The *Perry* court expressly recognized the principle that liability can arise from the negligent performance of a voluntary undertaking, even if it is gratuitous. *Id.* This concept is a familiar one in Indiana. *See Board of Commissioners v. Hatton,* 427 N.E.2d 696, 699–700 (1981); *Warren v. City of Indianapolis,* 375 N.E.2d 1163, 1166–1167 (1978). Where one adds to the peril of another by attempting a rescue in a negligent manner so that the dangers are increased, the rescuer is liable for injuries

caused by his negligence. *Warren,* 375 N.E.2d at 1167 (citing Restatement (Second) of Torts § 322 with approval).

In this case, the facts reviewed in a light most favorable to the plaintiff give rise to a duty and support a cause of action. The firemen might have ignored Mr. Carrell, since absent some definite relationship between the parties there is no liability for nonfeasance. *Crouch v. Hall,* 406 N.E.2d 303, 304 (1980); *Warren v. City of Indianapolis,* 375 N.E.2d 1163, 1166 (Ind.App.1978).[3] Or the firemen might have merely radioed the police, since that undertaking in no way increased the danger to Mr. Carrell. *Sports, Inc. v. Gilbert,* 431 N.E.2d 534, 536–37 (Ind.App.1982). Instead, the defendant firemen flashed their spotlight on Mr. Carrell in an attempt to warn Nulf of the pedestrian on the highway. This affirmative conduct undertaken to rescue Carrell gave rise to a duty to act with reasonable care. In that the spotlight may have foreseeably distracted or blinded the automobile driver, arguably leaving Mr. Carrell in a worse position, a jury might find that the firemen did not conform to the standard of reasonable care in their rescue attempt. Summary judgment is inappropriate on this ground.

### Conclusion

Defendants Owen and Witka acted outside their scope of employment and are not shielded by the provisions of the ITCA. Viewing the facts in the light most favorable to the plaintiff, the defendants had a duty to act toward plaintiff Carrell with reasonable care—a duty which may have been breached. It is therefore ORDERED

---

**1.** The Rockwellian image of a fireman rescuing the family's pet cat from a tree has less to do with the fireman's rescuing ability than with his access to a long ladder. In Charlie Carrell's case, even the firemen's equipment was not especially suited to the rescue undertaken.

**2.** This decision may encourage the City of Portage to file an independent motion to dismiss. The issue of respondeat superior will be considered if and when it is raised by the parties.

**3.** Indiana law does not recognize a duty on the part of public officials such as firemen or policemen to act absent some special, particularized relationship. *Crouch v. Hall,* 406 N.E.2d 303, 304 (1980); *Estate of Tanasijevich v. City of Hammond,* 178 Ind.App. 669, 383 N.E.2d 1081, 1084–85 (1978).

that the Motion for Summary Judgment is DENIED.