Austin SIZEMORE and Charlotte Sizemore, Appellants–Plaintiffs,

v.

TEMPLETON OIL COMPANY, INC., Town of Bremen and State of Indiana, Appellees–Defendants.

No. 50A04–9906–CV–244.

Court of Appeals of Indiana.

Feb. 29, 2000.

3. *See* Op. at 646, n. 2.

Edmond W. Foley, Foley & Small, South Bend, Indiana Attorney for Templeton Oil Company.

Phillip A. Renz, Miller Carson Boxberger & Murphy LLP, Fort Wayne, Indiana, Attorney for Town of Bremen.

Matthew A. Yeakey, Jason G. Ward, Daniels, Sanders, Pianowski, Todd & Thomas, Elkhart, Indiana, Attorney for Appellee.

## OPINION

STATON, Judge

Austin and Charlotte Sizemore ( the "Sizemores") appeal the trial court's grant of summary judgment in favor of the Town of Bremen ("Bremen") and Templeton Oil Company ("Templeton"). The Sizemores raise two issues on appeal, which we restate as:

I. Whether the trial court incorrectly granted summary judgment in favor of Bremen.

II. Whether the trial court incorrectly granted summary judgment in favor of Templeton.

We reverse the trial court's grant of summary judgment in favor of Bremen, and affirm summary judgment in favor of Templeton.

Austin Sizemore fell and injured his ankle when a piece of asphalt at the edge of a large pothole located in the right-of-way of State Road 106 in Bremen gave way underneath him. Austin was walking on State Road 106 for the purpose of entering a Shell station owned by Templeton. The entrance of the Shell station was adjacent to and extended from the highway right-of-way in which the pothole was located. The Sizemores subsequently sued Bremen, Templeton and the State of Indiana, alleging that all three entities negligently caused Austin's injury. All three defendants moved for summary judgment. The trial court granted summary judgment in favor of Bremen and Templeton and, finding no just reason for delay, entered final judgment as to Bremen and Templeton pursuant to Ind. Trial Rule 54(B). This appeal ensued.

I.

*Summary Judgment for Bremen*

The trial court found, as a matter of law, that Bremen did not owe the Sizemores a duty of care and granted summary judgment in Bremen's favor. The Sizemores contend this was error. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The burden is on the moving party to prove

there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations in his pleadings. *Stephenson v. Ledbetter,* 596 N.E.2d 1369, 1371 (Ind.1992). At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

■ When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny,* 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994), *reh. denied, trans. denied.* We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

■ In a negligence action such as the one at bar, the plaintiff must prove three elements to prevail. These elements are (1) the existence of a duty of care owed by the defendant to the plaintiff, (2) a breach of that duty of care, and (3) injury to the plaintiff proximately caused by the breach of duty. *Benton v. City of Oakland City,* 721 N.E.2d 224 (Ind.1999). Generally, issues of breach and causation are questions of fact to be determined by the jury. Whether a duty exists, however, is a question of law for the court to decide and, therefore, is an issue generally appropriate for summary judgment. *Id.*; *McGlothlin v. M & U Trucking,* 649 N.E.2d 135, 137 (Ind.Ct.App.1995).

The pothole that allegedly caused injury to Austin Sizemore was located in the right-of-way of State Road 106. The State admitted, and the Sizemores do not dispute, that maintenance and repair of State Road 106 and its right-of-way is primarily the responsibility of the State. Neverthe-

less, the Sizemores present two theories under which they claim Bremen owed them a duty of care with respect to the pothole. We will address each of these theories in turn.

■ Although State Road 106, including the right-of-way, is state property, the Sizemores contend that Bremen owed them a duty of care with respect to the pothole because Bremen exerted control over that portion of State Road 106 on which Austin Sizemore was injured. The Sizemores correctly assert that a duty of care may exist with respect to premises not belonging to the defendant if the defendant controls the property upon which an injury occurs. *City of Bloomington v. Kuruzovich,* 517 N.E.2d 408, 411 (Ind.Ct. App.1987). In *Kuruzovich,* the plaintiff sued the city of Bloomington after he tripped over a manhole cover and was injured at a park owned by private citizens. This Court found that Bloomington was liable for Kuruzovich's injuries regardless of the fact that it did not own the park because Bloomington had an interest in and controlled the premises. *Id.* at 410. The facts indicating Bloomington's interest in and control over the park include the following: (1) Bloomington had previously leased the park from the private owners and remained a tenant at will when Kuruzovich was injured; (2) during the term of the lease, Bloomington listed the park as a city park, mowed the park, and removed trash from the park; (3) Bloomington continued to list the park as a city park, and to mow and remove trash from the park after the lease expired; and (4) the manhole cover over which Kuruzovich tripped was dedicated to the city. *Id.*

In their attempt to equate the facts of *Kuruzovich* to the present case, the Sizemores rely on the following facts to support their argument that Bremen exercised control over State Road 106: (1) Bremen has a contract with the State to sweep state roadways, including State Road 106, within town limits; (2) Bremen picks up brush and leaves along State

Road 106; (3) Bremen repairs sidewalks within the town limits, provided the property owner pays for the concrete; and (4) Bremen maintains a policy whereby its street department employees report road problems they encounter on state roads to the State Highway Department.

Bremen's street-sweeping contract with the State, its picking up brush, and its repair of sidewalks within town limits does not demonstrate control over State Road 106 with respect to the existence of potholes. Likewise, although Bremen maintains a policy whereby street department employees report road problems that they happen across, Bremen does not require its employees to inspect state roads for problems. Bremen's activities with respect to State Road 106 fall far short of the circumstances under which control over the premises was found in *Kuruzovich*. Bremen's street-sweeping contract is not the equivalent of a leasehold interest in the highway, nor does it impose on Bremen the responsibility to repair or maintain the highway with respect to potholes. Bremen does not exercise sufficient control over State Road 106 and its right-of-way to give rise to a duty of care with· respect to the pothole that allegedly caused Austin Sizemore's fall.

■ The Sizemores also assert that genuine issues of material fact exist with regard to whether Bremen assumed a duty ·toward them with respect to the pothole. Indiana recognizes the gratuitous assumption of duty by one who, through affirmative conduct or agreement, assumes and undertakes a duty to act. *Ember v. B.F.D., Inc.*, 490 N.E.2d 764, 769 (Ind.Ct. App.1986). The assumption of a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person. *Gunter v. Village Pub*, 606 N.E.2d 1310, 1312 (Ind.Ct.App.1993). Although the determination of whether a duty exists is generally a question of law, whether a party assumed a duty and the extent of that duty are questions for the fact-finder.

*Id.* We may decide whether Bremen assumed a duty toward the Sizemores only if there are no genuine issues of material fact. *American Legion Pioneer Post No. 340 v. Christon*, 712 N.E.2d 532, 536 (Ind. Ct.App.1999).

■ In support of their argument that Bremen assumed a duty with respect to the pothole, the Sizemores direct our attention to; Bremen's policy of logging citizen complaints and reporting problems on state roads to state authorities, to Charlotte Sizemore's testimony that she reported the pothole on State Road 106 to Bremen approximately two weeks before Austin Sizemore was injured; and that Bremen officials led her to believe that Bremen would contact the State and report the problem. Bremen argues that its policy of logging complaints and reporting problems it encounters on state roads to state authorities does not give rise to an inference that it assumed a duty "to patrol and inspect the state highways within its borders." Bremen brief at 10. Moreover, Bremen disputes Charlotte Sizemore's testimony that she contacted Bremen about the pothole prior to Austin Sizemore's injury. We agree with Bremen that it did not assume any duty to patrol and inspect state highways. However, Bremen's policy, coupled with the disputed evidence regarding Charlotte Sizemore's report to Bremen, may give rise to an inference that Bremen assumed a duty to report the pothole to the State. Whether this is actually the case, as well as whether Bremen breached any such duty and whether that breach proximately caused Austin Sizemore's injury, are genuine issues of material fact that we may not here determine. As such, summary judgment for Bremen was inappropriate on the issue of whether Bremen assumed a duty to report the pothole to the State.

## II.

### *Summary Judgment for Templeton*

The trial court granted summary judgment for Templeton based on its determi-

nation that Templeton had no duty of care with respect to the pothole located adjacent to its property, but entirely within the state highway right-of way. The Sizemores present several theories under which they argue that Templeton had a duty with respect to the pothole. We will address each of these theories in turn.

The Sizemores contend that Templeton owed them a duty of care with respect to the pothole due to its control over the premises on which the pothole was located. The Sizemores quote *Ember* for the proposition that "a duty of reasonable care may be extended beyond the business premises when it is reasonable for invitees to believe that the invitor controls the premises adjacent to his own or where the invitor knows his invitees customarily use such adjacent premises in connection with the invitation." *Ember*, 490 N.E.2d at 772. At first glance, *Ember* appears to have some bearing on the issue presently before us. However, *Ember* involved a criminal assault by a third person in a parking lot adjacent to a tavern, not a slip and fall due to a condition on adjoining property. Moreover, the *Ember* decision was based on the tavern's express assumption of a duty to protect persons beyond the tavern's premises, and not due to the tavern's control of adjacent premises.

The Sizemores rely on the fact that Templeton lighted, swept, and plowed the parking lot of the Shell station and the entrance thereto, which was adjacent to the right-of-way in which the pothole was located, to support their argument that Templeton exercised control over the right-of-way. As with their argument that Bremen controlled the premises, the Sizemores attempt to equate these facts to those in *Kuruzovich*. We find the two situations wholly dissimilar. Even assuming that Templeton's sweeping and plowing activities included the area where the pothole was located, those activities do not demonstrate control over the condition and repair of the pavement itself. No genuine issues of fact exist with respect to whether Templeton controlled the state highway right-of way. The Sizemores cannot prevail under this theory.

The Sizemores also contend that genuine issues of fact exist with regard to whether Templeton assumed a duty of care with respect to the pothole. In support of this contention, the Sizemores rely on Templeton's policy of inspecting its parking lot for problems. Further, the Sizemores point out that Templeton knew about the pothole and allege that they relied on Templeton's policy of inspection.[1] This evidence does not demonstrate any genuine issue of fact with respect to whether Templeton assumed a duty toward the Sizemores with respect to the pothole. Assumption of a duty requires affirmative conduct or agreement to undertake some action on the part of the defendant. *Ember*, 490 N.E.2d at 769. There is no evidence of affirmative conduct or agreement on Templeton's part that supports the Sizemores' argument that Templeton assumed a duty with respect to the pothole. Templeton's policy of inspecting its own premises does not give rise to an inference that it assumed a duty to inspect, repair, report or act in any way with regard to the state highway right-of-way in which the pothole was located.

Of potentially greater merit is the Sizemores' contention that Templeton's duty to provide safe ingress and egress to its premises included a duty with respect to the pothole. The Sizemores correctly assert that a landowner owes an invitee a duty of reasonable care to provide safe ingress and egress to its business premis-

---

1. Charlotte Sizemore worked at Templeton's Shell station. Thus, Templeton's knowledge of the pothole is based on her knowledge of the pothole, and her discussions regarding such with the manager of the Shell station. Likewise, the allegation of reliance on Templeton's inspection policy is based on Charlotte Sizemore's knowledge of such policy due to her employment there.

es.[2]  However, the Indiana cases cited by the Sizemores regarding the duty to provide safe ingress and egress do not support their contention that this duty extends to a duty with respect to a pothole located entirely outside of the business premises.  In *Verplank v. Commercial Bank of Crown Point*, 145 Ind.App. 324, 251 N.E.2d 52, 54 (1969), the plaintiff was injured in a bank parking lot when she tripped and fell over the ridge between the asphalt of the bank's parking lot and the concrete walkway leading up to the bank building.  The alleged dangerous condition and the injury both occurred entirely within the defendant's premises.  *Verplank* does not speak to the issue presented in the case at bar.

In *L.K.I. Holdings, Inc. v. Tyner,* 658 N.E.2d 111, 114 (Ind.Ct.App.1995), the plaintiff was injured in a traffic accident after the defendant constructed a mound on its property, which obstructed the view of vehicles traveling on a street that had been built and maintained by defendant, as well as travelers using a public street.  *Id.* This Court found a duty on the part of the landowner to prevent injury to travelers on the highway from unreasonable risks created by the property's dangerous condition.  *Id.* at 115.  In contrast, the pothole that allegedly caused Austin Sizemore's injury was not the result of any risk created by a dangerous condition on or created by Templeton's property.

Our own review reveals no Indiana cases standing for the proposition that the duty to provide safe ingress and egress to a commercial property extends to a duty with regard to the condition of the adjacent highway right-of-way when that condition was not created by or related to a defendant's use of his own property.  On the contrary, current Indiana law

indicates the opposite result.  In *State v. Flanigan,* 489 N.E.2d 1216, 1217 (Ind.Ct. App.1986), the plaintiffs were struck by a car as they walked along a highway to reach a flea market adjacent to the highway.  The plaintiffs sued the flea market's owners, alleging that they were negligent in failing to warn of the dangers incident to parking adjacent to the highway and walking along the highway to attend the flea market.  This Court reversed the trial court's denial of summary judgment in favor of the defendants, stating:

> In order to affirm the decision of the trial court, we would be required to hold that under the facts alleged in this case, the law imposed a duty upon the [defendants] to provide traffic control, issue warnings, or take other action to protect [plaintiffs] from being struck by a vehicle not under [defendants] control while [plaintiffs] were walking along the highway on their way to [defendant's] flea market.  In our opinion the law imposes no such duty.

*Id.* at 1217–18.  Accordingly, we held that "the owner of commercial premises adjacent to a public highway owes no duty to a patron who was injured when struck by an automobile as that patron was crossing or walking upon or along such highway." *Id.* at 1218–19.

Templeton argues that *Flanigan* is dispositive of the issue before us.  If Austin Sizemore had been struck by a vehicle as he crossed State Road 106, we would agree.  However, Austin Sizemore's injury was not the result of a vehicle traveling upon the highway, but rather the result of a condition of the roadway itself of which Templeton was aware.  The potential import of this distinction becomes clear when we look more carefully at *Flanigan*.  In

---

**2.** The duty owed to a particular person is determined by that person's status on the property as an invitee, a licensee, or a trespasser.  *Burrell v. Meads,* 569 N.E.2d 637, 639 (Ind.1991).  Austin Sizemore was allegedly on his way to the mini-mart to make some purchases and visit with his wife while she worked.  Had he reached his destination, he would have been an invitee of Templeton's.  For purposes of this argument, we assume that Austin Sizemore was a business invitee of Templeton, even though his accident occurred before he reached Templeton's premises.

reaching our decision in *Flanigan*, we cited with approval the decision in *Laufenberg v. Golab*, 108 Ill.App.3d 133, 63 Ill. Dec. 875, 438 N.E.2d 1238 (1982). In fact, we cited a passage from *Laufenberg*, wherein the Illinois Court of Appeals differentiated between the circumstance where a plaintiff is struck by a vehicle, as in *Laufenberg* and *Flanigan*, and circumstances where:

> there was a physical defect of some kind either in the premises as such, *or in an area very close to the premises. Absolutely to the contrary, in the case at bar, the injuries allegedly suffered by plaintiff have no connection of any kind with the physical condition of the roadway but resulted entirely from the intervention of an independent factor beyond control of the defendant.*

*Id.* at 1241 (emphasis added).

In the case at bar, Austin Sizemore's injury was the result of the physical condition of the roadway in an area very close to Templeton's premises, a factual scenario not covered by *Laufenberg* or *Flanigan*. Nevertheless, our decision in *Jump v. Bank of Versailles*, 586 N.E.2d 873 (Ind. Ct.App.1992), leads us to conclude that even if the plaintiffs in *Flanigan* had fallen into a pothole while walking along the highway to reach the flea market, the flea market owners would not have owed them a duty of care. In other words, the distinction made in *Laufenberg*, and quoted by us in *Flanigan*, is one without a difference.

In *Jump*, the plaintiff was injured when she fell down an icy stairwell located between a bank and the office building in which she worked. The stairwell was located entirely on the bank's property, although it was often used by the public to gain access to the adjacent office building. Jump sued the owner of the office building, arguing that the owner had a duty to keep the bank's steps reasonably safe for persons using the steps to gain access to the office building. *Id.* at 878–79. Recognizing the dearth of Indiana case law guiding resolution of the issue, this Court reviewed the law in other jurisdictions and ultimately concluded that the owner of the office building had no duty to Jump with regard to the bank's icy steps. *Id.* at 882. Specifically, we stated, "we will not aid even innocent plaintiffs by imposing a duty on adjacent landowners who have not created a dangerous condition affecting the adjoining property and invited their invitees to use such property." *Id.*[3] Like the defendant building owner in *Jump*, Templeton did not create the allegedly dangerous pothole on the highway right-of-way. Thus, we hold that Templeton did not owe the Sizemores a duty with respect to the pothole.

Our holding today, and our earlier holding in *Jump*, is consistent with our conservative approach in other factual circumstances, wherein we have held that a landowner's only duty to persons traveling on an adjacent highway is to refrain from creating or maintaining a hazardous condition. *See Sheley v. Cross*, 680 N.E.2d 10, 13 (Ind.Ct.App.1997), *trans. denied*; *L.K.I. Holdings*, 658 N.E.2d at 115; *Holiday Rambler Corp. v. Gessinger*, 541 N.E.2d 559, 562 (Ind.Ct.App.1989); *Pitcairn v. Whiteside*, 109 Ind.App. 693, 34 N.E.2d 943, 946 (1941).[4] Moreover, public policy considerations weigh against the extension of the duty to provide safe ingress and egress outside of the business owner's premises. It is unclear how a business owner would discharge such a duty.

---

**3.** In so holding, we discussed and declined to follow *Rockefeller v. Standard Oil Company*, 11 Wash.App. 520, 523 P.2d 1207 (1974), *Piedalue v. Clinton Elementary School District*, 214 Mont. 99, 692 P.2d 20 (1984), and *Dumas v. Pike County*, 642 F.Supp. 131 (S.D.Miss.1986) – the three foreign jurisdiction cases relied on by the Sizemores.

**4.** These cases differ from the one at bar because they deal with the landowner's duty to persons traveling on a highway generally. Here, the duty at issue is one to an alleged invitee outside the landowner's premises.

Surely they would not be required to re-pair conditions such as potholes, particularly on state roads.

Summary judgment for Templeton is affirmed. Summary judgment for Bremen is reversed and remanded to the trial court for further proceedings consistent with this opinion.

GARRARD, Sr. J., and NAJAM, J., concur.